IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMY E. BEVEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-1172-STE |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and he is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

an unfavorable decision. (TR. 15-27). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since January 1, 2014, her alleged onset date. (TR. 17). At step two, the ALJ determined that Ms. Bevel had the following severe impairments: DDD (Disorders of the back, discogenic and degenerative) and fibromyalgia. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ concluded that Ms. Bevel retained the residual functional capacity (RFC) to: "[P]erform the full range of sedentary work as defined in 20 CFR 404.1567(a)." (TR. 19). With this RFC, the ALJ concluded that Ms. Bevel was unable to perform any past relevant work. (TR. 26). However, because the ALJ concluded that Ms. Bevel could perform the full range of sedentary work, he proceeded to assess the issue of disability utilizing the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). *See* Social Security Ruling 83-11, Titles II And XVI: Capability to Do Other Work--the Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252 at (1983) (allowing application of the Grids when the claimant can perform all

of the exertional demand at a given level of exertion, i.e.—a full range of "sedentary" work).

Because Ms. Bevel was considered a "younger individual," with a high school diploma or more, with no transferrable work skills, and was deemed capable of performing a full range of sedentary work, the applicable "Grid" was Rule 201.28. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; Rule 201.28. The ALJ applied this rule, and concluded that Ms. Bevel was not disabled. (TR. 27).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

3

## IV.  ISSUES PRESENTED

Ms. Bevel alleges: (1) the ALJ erred at step two by failing to properly consider Plaintiff's depression, chronic pain disorder, and obesity; (2) the Appeals Council erred by failing to consider certain evidence; (3) the ALJ erred in evaluating Plaintiff's subjective complaints; and (4) the ALJ erred in relying on the Grids at step five. (ECF No. 19:3-15).[2]

## V.  STEP TWO

At step two, the ALJ: (1) found that Ms. Bevel's medically determinable mental impairment of "Anxiety Disorders" was not considered a severe impairment and (2) made no findings regarding whether Plaintiff's chronic pain disorder and obesity were considered severe impairments. (TR. 17-19). Ms. Bevel alleges error in these findings. (ECF No. 19:3-6).[3] The Court rejects this argument.

At step two, the ALJ found that Plaintiff suffered from two severe impairments. (TR. 17). The Tenth Circuit Court of Appeals has held that "once an ALJ finds that a claimant has at least one severe impairment, he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the

---

[2] Ms. Bevel alleges an additional point of error—that the ALJ failed to consider the impact of her obesity at step five. (ECF No. 19:14-15). This allegation will be subsumed in the discussion of the ALJ's reliance on the Grids. *See infra*.

[3] Within this specific allegation of error, Plaintiff also argues that the ALJ "miscast" two pieces of evidence. (ECF No. 19:5-6). First, Plaintiff states that the ALJ noted "no evidence of … foraminal stenosis" in "MRIs," then referred to an MRI finding which showed "scattered borderline to mild neural foraminal narrowing." (ECF No. 19:5). Second, Ms. Bevel states that the ALJ incorrectly referred to a "CT scan" as an "MRI." (ECF No. 19:6). But Plaintiff does not argue how these alleged misstatements are relevant to the findings at step two, or to the decision overall. *See* ECF No. 19. As a result, the Court will not further consider these arguments. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.' " *Barrett v. Astrue,* 340 F. App'x 481, 484 (10th Cir. 2009) (quoting 20 C.F.R. § 404.1523). Consequently, the undersigned "can easily dispose of" Plaintiff's step-two challenge. *Oldham v. Astrue,* 509 F.3d 1254, 1256 (10th Cir. 2007); *see also Brescia v. Astrue,* 287 F. App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error...."). Thus, the Court finds no error at step two.

## VI. EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

On January 12, 2018, Plaintiff appealed the ALJ's decision to the Appeals Council. (TR. 188). In doing so, Ms. Bevel submitted additional evidence in the form of a February 16, 2018 CT scan of her lumbar spine. (TR. 8-9).[4] The Appeals Council declined Plaintiff's request for review, and in doing so, stated:

> You submitted Vantage Diagnostic Imaging report dated February 16, 2018 (2 pages). The Administrative Law Judge decided your case through November 17, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 17, 2017.

(TR. 2). "[T]he Appeals Council's dismissal of the additional evidence's import on the grounds that it was not temporally relevant indicates that it ultimately found the evidence did not qualify for consideration at all." *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013). This decision is supported by the regulations. *See* 20 C.F.R. § 404.970(a)(5)

---

[4] Plaintiff states that the report in question was an MRI, but in fact it was a CT scan. *Compare* ECF No. 19:6 *with* TR. 8-9. The Court only notes the distinction because Plaintiff had chastised the ALJ for making the same mistake with respect to a CT scan from January 24, 2013, which the ALJ had referred to as an MRI. *See* ECF No. 19:6; *compare* TR. 21 *with* TR. 326.

5

(noting that temporal relevance is a requirement to warrant consideration by the Appeals Council). Ms. Bevel alleges error in the Appeals Council's failure to consider the additional evidence,[5] but the Court rejects this argument.

Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to *de novo* review. *Threet v. Barnhart,* 353 F.3d 1185, 1191 (10th Cir. 2003). Additional evidence should only be considered by the Appeals Council if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5) (effective Jan. 17, 2017).[6] Evidence is considered "new" "if it is not duplicative or cumulative," and it is considered "material" "if there is a reasonable possibility that it would have changed the outcome." *Threet,* 353 F.3d at 1191 (alterations omitted) (internal quotation marks omitted). Evidence is considered "chronologically pertinent" if it relates to the time period on or before the ALJ's decision. *Id.* If the Appeals Council erred in rejecting the evidence, remand is warranted. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

---

[5] (TR. 19:6-7).

[6] The requirement that the additional evidence create a "reasonable probability" of changing the outcome of the decision was added to the regulations on January 17, 2017, with compliance required by May 1, 2017. *See* 81 Fed. Reg. 90,987 (Dec. 16, 2016), 2016 WL 7242991 (F.R.). The District of New Mexico has read the change as requiring a "heightened materiality standard." *See Bisbee v. Berryhill,* No. 18-CV-0731 SMV, 2019 WL 1129459, at *3, n.5 (D.N.M. Mar. 12, 2019) (noting that the new regulations "heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable possibility of changing the outcome, now it requires a reasonable probability of changing the outcome"). But the Tenth Circuit has not announced such a bright-line rule.

Here, Ms. Bevel argues that the evidence is "new" because it "has not been in the record previously." (ECF No. 19:6). The Court disagrees. As stated, evidence is considered "new" "if it is not duplicative or cumulative." See supra, Threet. The record before the ALJ included a CT scan of Ms. Bevel's lumbar spine dated June 6, 2016. (TR. 513-514). The CT scan submitted to the Appeals Council, dated February 16, 2018, is not considered "new" because it is cumulative of the June 6, 2016 report. The findings from the two scans are as follows:

| **June 6, 2016 CT scan** (included in the record before the ALJ) | **February 16, 2018 CT scan** (submitted to the Appeals Council) |
|---|---|
| **L1/2:** The central canal and neural foramina are patent. | **L1/2:** The central canal and neural foramen are patent. |
| **L2/3:** The central canal and neural foramina are patent. | **L2/3:** The central canal and neural foramen are patent. |
| **L3/4:** There is mild facet hypertrophy. There is ligamentum flavum thickening with mild calcifications on the right. Central canal is patent. There is mild neural foraminal narrowing. | **L3/4:** There is mild facet hypertrophy with mild vacuum-disc phenomenon on the left facet joint. There is ligamentum flavum thickening with mild calcification on the right. There is a small annular disc bulge with borderline central canal narrowing measuring 10 mm. There is mild bilateral neuroforaminal narrowing. |
| **L4/5:** There are postsurgical changes with interbody fusion graft in place. There is hypertrophy of the facet joints with mild posterior endplate spurring. The central canal is patent. There is mild neural foraminal narrowing. | **L4/5:** There are postsurgical changes. There is mild hypertrophy of the facet joints with mild posterior endplate spurring. The central canal is patent. There is mild right with mild/moderate left neuroforaminal narrowing. |
| **L5/S1:** There is facet hypertrophy. The central canal is patent. There is mild neural foraminal narrowing. | **L5/S1:** There is facet hypertrophy. The central canal is patent. There is mild/moderate neuroforaminal narrowing. |

Both scans were performed at Vantage Diagnostic Imaging and in the 2018 report, Dr. James Cooper specifically referenced the 2016 scan for comparison and stated: "there has been no significant change since the prior examination." (TR. 9). Based on the

findings in the reports themselves, as well as Dr. Cooper's comparison, the Court concludes that the 2018 scan was not "new" evidence, but instead was cumulative of the 2016 report, which had been included in the record before the ALJ.

Plaintiff contends that the evidence was "material" because "it reveals the progression of Claimant's worsening neuroforaminal narrowing, particularly at L4/5 and L5/1, when compared to Claimants [sic] August 13, 2016 MRI." (ECF No. 19:6). In support of this statement, Ms. Bevel cites the administrative transcript at pages 8-9. (ECF No. 19:6). But these pages are Plaintiff's February 16, 2018 CT scan, which refers to the June 6, 2016 scan for comparison, with no mention of an August 13, 2016 MRI. As stated, the findings in the February 18, 2018 scan are not considered "new" for purposes of consideration by the Appeals Council. Because the two scans render cumulative/duplicative results, the Court also concludes that the evidence is not considered "material"—i.e.—there is not a "reasonable possibility that [the February 2018 scan] would have changed the outcome." *Threet, supra*.

Finally, regarding whether the evidence is "chronologically pertinent," Ms. Bevel makes no argument. (ECF No. 19:6-7). Even though the February 2018 scan post-dated the ALJ's decision, evidence can be considered "chronologically pertinent" if it "relates to the time period before the ALJ's decision." *Padilla*, at 713. Here, an argument could be made that the evidence relates to the period before the ALJ's decision, as it essentially mirrors evidence which was presented to the ALJ—the June 6, 2016 CT scan. But for precisely *that* reason, the evidence is not considered "new" or "material." *See supra*. Because the evidence in question did not meet the three requirements for consideration

8

by the Appeals Council, the Court finds no error in the Appeals Council's failure to consider the evidence.

## VII. THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

Ms. Bevel alleges error in the ALJ's evaluation of Plaintiff's subjective allegations. (ECF No. 19:10-14). The Court disagrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;

9

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B. No Error in ALJ's Evaluation of Plaintiff's Subjective Allegations

Plaintiff's allegations of error on this issue are two-fold. First, Ms. Bevel alleges that the ALJ improperly relied on boilerplate language to discount her subjective complaints. (ECF No. 19:10-11). Second, Plaintiff alleges the ALJ's evaluation lacked substantial evidence. (ECF No. 19:12-14). Neither argument has merit.

#### 1. No Improper Use of Boilerplate Language

In formulating the RFC, the ALJ stated that he had considered Ms. Bevel's subjective allegations. (TR. 20). The ALJ then: (1) set forth the two-step framework under SSR 16-3p, (2) summarized the Plaintiff's hearing testimony, and stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 21). Ms. Bevel alleges that this explanation was nothing more than improper boilerplate language and specifically, that the ALJ's reference to "other evidence in the record" was insufficient. (ECF No. 19:10-11, 13).

It is true, the Tenth Circuit Court of Appeals has held that the use of boilerplate language, "in the absence of a more thorough analysis" is insufficient to support an ALJ's credibility determination. *Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004). But here, the ALJ did more than merely recite boilerplate. By means of explanation regarding Plaintiff's subjective allegations, the ALJ discussed:

- Objective evidence, including MRIs, and treatment notes;
- Plaintiff's drug-seeking behavior;
- Ms. Bevel's activities of daily living; and
- Plaintiff's use of medications and other treatments.

(ECF No. 21-26). Because the ALJ referred to specific evidence in support of his decision to discount Plaintiff's credibility, the Court rejects this allegation of error. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170-71 (10th Cir. 2012) (no error when ALJ referred to "other factors" and "other reasons" in evaluating claimant's credibility when he thereafter cited medical evidence, including MRIs and treatment notes in support of his determination).

### 2. The ALJ's Evaluation was Supported by Substantial Evidence

Despite Plaintiff's allegations that the ALJ had employed improper boilerplate reasoning, Ms. Bevel recognizes that the ALJ provided specific reasons in discounting Plaintiff's subjective allegations. (ECF No. 19:11-13). However, in her second allegation

11

of error on this issue, Plaintiff challenges the ALJ's reliance on Ms. Bevel's: (1) drug-seeking behavior and (2) activities of daily living. These arguments are without merit.

First, as to Ms. Bevel's drug-seeking behavior, the ALJ noted that Plaintiff received treatment from Dr. Terrell Phillips from 2013 through March 4, 2016, when Plaintiff was ultimately discharged from his care following three inappropriate urinalysis tests and violating the narcotics contract she had signed. (TR. 22). After examining various treatment notes from different providers and the MRI evidence, the ALJ found: "[Ms. Bevel's] pattern of drug-seeking behavior is inconsistent with the physicians' instructions and recommendations. Indeed, the level of narcotics the claimant was seeking is not warranted by the objective findings of evidence as illustrated in the MRIs of her spine." (TR. 26). The ALJ also found that "[t]he most blatant example of the claimant's drug seeking behavior" was noted during an encounter with Allen Rural Family Medicine on June 26, 2017. (TR. 25). The ALJ accurately described the situation thus:

> [Plaintiff] was seen on the 26th [of June, 2017] and came back to get the Norco prescription on the 29th. When she took it to the pharmacy, the pharmacist informed the physician that [Plaintiff] had just filled a prescription for Norco from another doctor on June 15th for 90 tablets. The physician informed the pharmacist not to fill the prescription and that the claimant needed to call their office. When she called, [the physician] informed the claimant what the pharmacist had relayed to him and stated that they would not be refilling any narcotics for her any longer but they could see her for the next month while she is looking for a new doctor. The physician stated that the claimant hung up on him.

(TR. 25).

Plaintiff argues that "it must be taken into consideration that Claimant's doctors have prescribed Valium and narcotic for pain and muscle spasms … [and] [i]f Claimant is drug-seeking, it cannot be ignored that her doctors kept prescribing strong narcotics to

her." (ECF No. 19:11).[7] In support, Plaintiff relies on *Saleem v. Chater*, 86 F.3d 176 (10th Cir. 1996), but her reliance is misplaced. In *Saleem*, the ALJ discounted the plaintiff's allegations of disabling pain, finding that the pain had been effectively controlled by pain medication. *Saleem*, at 179. However, in that case, the evidence also revealed that the plaintiff was addicted to the pain medication and "[t]he net result of the ALJ's decision [would be] that [the plaintiff] would return to work, addicted, because her drug abuse [would] keep her from feeling severe pain." *Id.* The Tenth Circuit found this rationale unacceptable, stating:

> [T]he ALJ cannot discredit a claimant's assertions of disabling pain by relying on her use of medicines to which the medical evidence clearly indicates she is addicted, and which she should have long ago stopped taking, but which presently provide adequate pain relief. [The treating physician's] statement, on which the ALJ relied, that [the plaintiff's] pain is "*effectively* controlled by medicines," is clearly unsupported by the medical evidence; addiction is not "effective control" of pain.

*Id.* at 179-180. *Saleem* is not controlling in the instant case.

Unlike *Saleem*, there is no evidence that Ms. Bevel was addicted to the narcotics she was prescribed and would be returning to work while so affected. Here, the evidence showed: (1) Dr. Phillips discharged Ms. Bevel from his care following three inappropriate urinalysis tests and for violating the pain medication contract and (2) the Allen Rural

---

[7] Within this allegation of error, Ms. Bevel presents two additional arguments, but neither provides a basis for reversal. First, Plaintiff states that the ALJ "ignores in spite of the drug-seeking, no doctor has recorded Claimant's complaints as exaggerated." (ECF No. 19:11). But "[t]he absence of evidence is not evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1491 (10th Cir. 1993). Thus, the lack of findings representing that Plaintiff had exaggerated her complaints provides no basis on which to disrupt the ALJ's findings. Second, Plaintiff states: "The ALJ's … failure to assess Claimant's obesity and her chronic pain disorder—shows that the ALJ's credibility analysis is lacking." (ECF No. 19:13). But Plaintiff does not further develop this argument and the Court will, therefore, not consider it. *See supra*, n. 2.

Family Medicine clinic also discharged Plaintiff from their care based on Plaintiff's drug-seeking behavior. *See supra*. There is no evidence that Plaintiff was chemically dependent on narcotics and would only be able to work while addicted to drugs. The ALJ properly discounted Plaintiff's subjective allegations by relying on her drug-seeking behavior and no error exists. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) ("there is sufficient evidence in the record to support the ALJ's determination that [the plaintiff's] credibility about her pain and limitations was compromised by her drug-seeking behavior.").

    Second, Ms. Bevel argues that the ALJ improperly relied on Plaintiff's activities of daily living to discount her subjective allegations. (ECF No. 19:12-13). Specifically, Ms. Bevel argues that the ALJ "failed to capture the essence of their performance, inferring that ADLs are done on a daily basis and continually each day for eight hours … [and] [m]inimal ADLs are not indicative of an ability to work on a full-time basis." (ECF No. 19:12). The Court agrees with Ms. Bevel that it is well-established that a claimant's activities of daily living do not, *by themselves*, determine the claimant's ability to work. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("sporadic performance of household asks or work does not establish that a person is capable of engaging in substantial gainful activity.") (alteration and internal quotation marks omitted); *accord Gossett v. Brown*, 862 F.2d 802, 807 (10th Cir. 1988) ("[E]vidence that a claimant engages in limited activities ... does not establish that the claimant can engage in light or sedentary work activity."). However, in addition to activities of daily living, the ALJ relied on:

- Objective evidence, including MRIs and treatment notes;
- Plaintiff's drug-seeking behavior; and
- Plaintiff's use of medications and other treatments.

(TR. 21-26). Because the ALJ provided rationales in addition to Plaintiff's "activities of daily living," the Court concludes that the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1168 (10th Cir. 2012) (ALJ properly relied on plaintiff's activities of daily living as one factor to discount her credibility).

## VIII. THE ALJ'S RELIANCE ON THE GRIDS

Ms. Bevel alleges the ALJ improperly relied on the Grids at step five. (ECF No. 19:7-10). The Court rejects this argument.

### A. The Grids

At step five, the burden of proof shifts to the Commissioner "to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given her age, education, and work experience." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (alterations in original). One of the ways the Commissioner can meet this burden is through use of "the Grids." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The Grids are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Daniels*, at 1132 (citing *Heckler v. Campbell,* 461 U.S. 458, 461–62 (1983). The Grids may provide a shortcut in certain

circumstances to determine whether a claimant can perform other work by obviating the need for a vocational expert's testimony. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir. 1992).

Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.,* sedentary, light, medium, heavy, and very heavy). 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the existence of jobs in the national economy for that claimant is established, and the rule directs a conclusion as to whether the individual is or is not disabled." *Daniels*, at 1132 (citation and internal quotation marks omitted). However, the Commissioner may not apply the Grids "conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." *Id*. An ALJ may not rely on the Grids unless he determines that a claimant is able to perform a full range of work, without any nonexertional impairments. *See Polson v. Astrue*, 508 F. App'x 705, 709 (10th Cir. 2013).

B. **No Error in the ALJ's Reliance on the Grids**

As support for this proposition, Plaintiff alleges error in the RFC determination which, in turn, affected the step five findings. (ECF No. 19:7-10, 14-15). Specifically, Plaintiff alleges: (1) the RFC failed to accommodate limitations owing to Plaintiff's fibromyalgia, degenerative disc disease, hypertension, obesity, and chronic pain disorder

16

and (2) the fibromyalgia is considered a nonexertional impairment which necessarily precluded reliance on the Grids. (TR. 19:7-10, 14-15). The Court rejects these arguments.

### 1. No Error in the RFC

At step two, the ALJ found Plaintiff's fibromyalgia and degenerative disc disease to be severe impairments, but made no mention of Plaintiff's hypertension, obesity, and chronic pain disorder. (TR. 17). Even so, in formulating the RFC, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). However, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014). The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick*, at 650 ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

Here, Plaintiff alleges: (1) error in the RFC which failed to include limitations stemming from her fibromyalgia, degenerative disc disease, hypertension, obesity, and chronic pain disorder and (2) with such limitations, the ALJ could not conclusively rely on the Grids at step five. (ECF No. 19:7-10). Ms. Bevel suggests that these impairments would: (1) require unscheduled breaks to accommodate her need to recline and (2) cause a reduction in her ability to concentrate and attend to tasks. (ECF No. 19:9-10). But Ms. Bevel has not supported these allegations with any evidence in the record, nor identified

in the record *any* work-related functional limitation necessitated by these conditions that exceeds the limitations reflected in RFC. "[D]isability requires more than mere inability to work without pain," *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986), and it is Plaintiff's burden to identify specific work-related limitations indicating that her pain or complications from certain conditions was so severe as to be disabling. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the burden is on claimant to establish disability in the first four steps of sequential analysis); *Kirkpatrick*, at 649 (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how [the RFC's] restrictions fail to account" for his impairments and "it isn't our obligation to search the record and construct a party's arguments"). Accordingly, the Court concludes that Ms. Bevel has not met her burden to establish that the ALJ erred in the RFC by failing to include limitations related to Plaintiff's fibromyalgia, degenerative disc disease, hypertension, obesity, and chronic pain disorder.

    **2.    The Fibromyalgia did not Automatically Disqualify the ALJ's Reliance on the Grids**

Plaintiff also argues that her fibromyalgia, by its nature, is a nonexertional impairment that necessarily precluded reliance on the Grids at step five. (ECF No. 19:7-8). In support, Plaintiff states that "the medical findings support Claimant's allegations of pain from the fibromyalgia" and that the ALJ engaged in "adjudicative sleight of hand" in failing to include any limitations at step five. In support, Plaintiff cites *Givens v. Astrue*, 251 F. App'x 561, 566 (10th Cir. 2007). In *Givens*, the Court found an "odd inconsistency" between the ALJ's finding of a mental impairment as "severe" at step two, but then finding no limitations owing to the impairment at later steps in the disability determination.

*Givens*, at 567. But in *Givens*, the ALJ had given "no specific reasons, with reference to the evidence, for his conclusions." *Id.* Here, the ALJ acknowledged Plaintiff's fibromyalgia, including her testimony regarding the effects of the condition and related medical evidence. (TR. 20-21, 23-24). As discussed, no error exists in the ALJ's evaluation of Plaintiff's subjective allegations. *See supra*. And with respect to the medical evidence, the ALJ extensively discussed Plaintiff's treatment for fibromyalgia from Dr. Robert McArthur for fibromyalgia, findings which Ms. Bevel does not challenge.

Unlike the situation in *Givens*, the ALJ adequately explained his treatment of Plaintiff's fibromyalgia and his decision to not include any specific related limitations in the RFC. Thus, with an RFC for a full range of sedentary work, the ALJ properly relied on the Grids at step five.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on September 27, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE